ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |
|---|---|
| ACTION OUTDOOR ADVERTISING J.V., LLC and JON P. STRENGTH, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) CASE NO. 2:06cv426-DRB ) |
| JOE MCINNES, as an individual and in his official capacity as DIRECTOR of the DEPARTMENT OF TRANSPORTATION FOR THE STATE OF ALABAMA, RANDY BRADEN, as an individual and in his official capacity as ASSISTANT STATE MAINTENANCE ENGINEER for the DEPARTMENT OF TRANSPORTATION FOR THE STATE OF ALABAMA, and CHRIS HILYER, as an individual and in his official capacity as DISTRICT ENGINEER for the DEPARTMENT OF TRANSPORTATION FOR THE STATE OF ALABAMA, | ) ) ) ) ) ) ) ) ) **DEMAND FOR JURY TRIAL** ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

## COMPLAINT AND REQUEST FOR INJUNCTIVE
## AND MANDAMUS RELIEF

Plaintiffs Action Outdoor Advertising J.V., LLC ("Action") and Jon P.

Strength ("Mr. Strength") file this their Complaint and Request for Injunctive and

Mandamus Relief against Defendants Joe McInnes, Randy Braden, and Chris


SCANNED
5/12/06

Hilyer, both as individuals and in their capacities as officials of the Alabama Department of Transportation ("DOT"), and allege as follows:

PARTIES

1.

Action is a limited liability company registered and authorized to transact business in the State of Alabama. Action is in the business of erecting and operating advertising signs that are utilized by businesses, organizations, and individuals, including Action's owners, to communicate commercial and noncommercial messages. Action currently owns and operates six signs with 12 advertising faces in the State of Alabama.

2.

Plaintiff Mr. Strength is an individual resident of the State of Alabama and the owner of substantial real property in the City of Millbrook, Alabama. Mr. Strength is a professional land surveyor and co-owns an engineering and development services company.

3.

Defendant Joe McInnes is the Director of the DOT. The DOT is a governmental agency of the State of Alabama with authority over State and federal roadways within Alabama. The DOT is also the agency charged with administering the State's sign regulations. As such, DOT has jurisdiction over the

2

five sign permits sought by Action and Mr. Strength and Defendant McInnes is ultimately responsible for the conduct described herein. Defendant Randy Braden is the Assistant State Maintenance Engineer for the DOT. He has been personally involved in delaying and obstructing constitutional treatment of the Plaintiffs' sign applications. Defendant Chris Hilyer is the District Engineer for the Sixth Division and has been personally involved in the unconstitutional conduct described herein.

JURISDICTION AND VENUE

4.

Plaintiffs' claims arise under the First and Fourteenth Amendments to the United States Constitution and Section 1983 of the Civil Rights Act. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs' state law claims are so related to Plaintiffs' federal law claims that this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5.

Defendants are subject to the jurisdiction of this Court and venue in the Northern Division is proper against Defendants under the facts and circumstances as alleged herein.

3

## FACTUAL ALLEGATIONS

A.   Plaintiffs Seek to Erect Five Signs Along Interstate 65.

6.

Action's owners are experts in the outdoor advertising business and are very familiar with the market for such signs in Alabama. As such, Action's owners are aware that there is a need for advertising signs along Interstate 65 in the City of Millbrook. This area has recently seen dramatic growth among both commercial and residential developments.

7.

Action researched the area and met with Jon P. Strength, the owner of a large tract of commercially-zoned property that has recently been annexed into the City of Millbrook (the "Parcel"). The Parcel extends along Interstate 65 for well over 2000 feet. Mr. Strength also owns several additional properties that extend along Interstate 65 from Highway 14 to the Parcel. Mr. Strength expressed his interest in leasing the Parcel to Action so that Action could post and operate several advertising signs thereon. A lease agreement was concluded that would allow Action to erect five industry-standard signs or "billboards" on the property.

8.

Generally, advertising signs along state or federal highways must be permitted by both the local jurisdiction and the state. As such, Action and Mr.

4

Strength set about obtaining permission to erect the signs from the City of Millbrook. Permission was obtained from the City and local permits received for all five locations. This paperwork has been sent to the DOT to prove that the signs have been authorized by the City.

9.

Action's owners are very familiar with the State's sign regulations and have previously applied for and received several DOT sign permits. Alabama's laws and regulations allow advertising signs on incorporated commercial property as long as certain size, spacing, and height requirements are complied with. Action's proposed signs complied with all such regulations. For example, as industry-standard signs measuring 14' x 48' they fall well below the State's allowable size. Action has agreed to space the signs with more than 500 feet between each sign. The signs will range from 45 feet to 75 feet in height, once again well within the State's requirements. As such, the five proposed signs are fully compliant with all laws and regulations of the State of Alabama.

10.

Action submitted fully completed application paperwork for the five signs to the DOT prior to September of 2005. The DOT's District Engineer, S.T. Wright, formally recommended that each of the five applications be approved. Despite the locations' full compliance with State law and regulation, as confirmed by Mr.

5

Wright's analysis, the DOT failed to issue the permits. Finally, on October 21, 2005, the permits were indeed granted. Permit Numbers OA-6-1-392, 393, 394, 395, and 396 were assigned to the locations.

11.

Upon information and belief and for reasons not yet known to Action, however, Defendant Braden decided to reconsider the issuance of the permits prior to even notifying Action that the permits had been issued. Upon information and belief, Defendant Braden told Mr. Wright that the permits were not to be sent to Action despite their compliance with all applicable laws and regulations.

12.

On December 29, 2005, Defendants ordered Mr. Wright to send a letter to Action stating that "[t]hese permit requests have been denied." Mr. Wright did not acknowledge that the permits had actually previously been granted. In his letter, he alleged that the basis for denial was that "the adjacent land is zoned and being used for residential purposes." He further stated: "Because access to the proposed signs is from residential property, the requested permits cannot be granted." No regulation was cited to support these rulings and, indeed, no such regulations exist. Furthermore, the DOT has often and recently approved many signs that violate these purported regulations.

13.

Action immediately made inquiries with Mr. Wright, Mr. Butch Mann, and Defendant Hilyer – all DOT officials – regarding the improper bases for denial. No DOT official could cite any regulation to support the denials because the denials were not based on law but rather Defendants' informal criteria.

14.

Action's owners and representatives were told various different reasons for the permit denials depending upon which DOT official they were speaking too. Further, they were lead to believe that the denial letter from Mr. Wright was simply a "tentative" denial/revocation. They were told that a meeting would be arranged between Action's owners, Mr. Strength, Defendant Hilyer, and other DOT officials. Action's owners called several times to inquire about the date and time for the meeting. No one at the DOT would ever commit to such a meeting. When Action's owners asked the DOT officials how they could formally appeal the "tentative" decision, they were told that there was no method of appeal.

15.

After the passage of nearly a month without any concrete response from the DOT or Defendants and no indication that a meeting would be scheduled soon, Action's owners were compelled to contact counsel about legal alternatives to Defendants' untenable position.

7

16.

On January 23, 2006, counsel for Action wrote to several DOT representatives, including all Defendants, in an attempt to reach a solution to the dispute. A true and accurate copy of the letter is attached hereto as Exhibit A.

17.

On January 23, 2006, in an abundance of caution, counsel for Action also filed a Request for Hearing pursuant to Alabama Code § 41-22-12. A true and accurate copy of the Request for Hearing is attached hereto as Exhibit B.

18.

By letter dated February 14, 2006, the DOT's Chief Counsel, Jim R. Ippolito, Jr., wrote a response letter stating that "no final decision has been made on the applications" but that "a decision should be made shortly."

19.

On February 21, 2006, counsel for Action wrote to several DOT officials, including Defendants, and concluded the letter with: "My clients look forward to receiving the final decisions this week." No final decision was forthcoming.

20.

Via telephone conversations, a conference call was set-up for March 2, 2006 to include various parties. Counsel for Action sent a letter to various DOT officials

on March 1, 2006 via facsimile with certain information that had been requested by DOT.

21.

During the conference call on March 2, 2006, Defendant Braden made clear that he personally made the decision to apply various informal criteria to Plaintiffs' applications. On the call, it was agreed that Action would submit additional possibly relevant documentation to the DOT during the following week and that the DOT would forward a final decision as to all five sign applications by March 24, 2006.

22.

Plaintiffs' counsel sent a letter and various documents to the DOT officials on March 9, 2006. The letter concluded: "I hope that the DOT will adhere to its commitment to forward a final decision as to all five applications by March 24, 2006."

23.

On March 22, 2006, a reminder letter was sent to the DOT prompting the promised response on March 24.

24.

Defendants and the DOT did not comply with their commitment to provide a response by March 24. Chief Counsel Ippolito informed Plaintiffs' counsel, however, that the latest tentative ruling was favorable and that the final decision to issue the permits should be expected shortly.

25.

Chief Counsel Ippolito eventually did call Plaintiffs' counsel to inform him that the DOT had agreed to issue all five of the requested permits. Action was instructed to resubmit the application paperwork to Defendant Hilyer for prompt action. The Federal Express package was sent by Action on the following day and received by Mr. Hilyer. The Chief Counsel stated that if the permits were not issued promptly he should be contacted to enforce the agreement to issue the permits.

26.

After several days with no response, Action's representatives began to call Defendant Hilyer. He did not respond. After three weeks had passed, Action's counsel called Chief Counsel Ippolito for an update. On April 26, 2006, Mr. Ippolito returned the call. He stated that Defendants and the DOT still had not made a final decision and that he could not commit to any deadline by which they

would be able to make its final decision. He was very apologetic but refused to provide any timeline by which final action could be expected.

27.

Left with no other options, and with losses escalating daily, Action and Mr. Strength have authorized the filing of this Complaint. As such, at this time, the following claims have been established by Plaintiffs:

REQUEST FOR RELIEF

COUNT ONE

DEFENDANTS HAVE DENIED ACTION AND MR. STRENGTH
EQUAL PROTECTION

28.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-27 above as if set forth verbatim herein.

29.

As described above, Defendants have adopted various informal criteria for the posting of signs in addition to the State's formal regulations that govern the posting of advertising signs along the State's highways. The DOT has issued many thousands of permits for signs that comply with the formal regulations. Although Action's proposed signs on Mr. Strength's Parcel comply fully with both the letter and intent of all duly adopted laws and regulations, they have not been allowed by Defendants. Other signs, identical in all substantive respects to those

11

sought by Plaintiffs, have been permitted on hundreds of occasions by the DOT including several signs in the immediate vicinity of the subject signs. Defendants' conduct shows that they have discriminated against Plaintiffs and thereby deprived Action and Mr. Strength of the ability to conduct business as other similarly-situated organizations and persons have been allowed to do.

30.

Because Defendants' conduct is constitutionally invalid, this Court should order them to issue the relevant permits and enjoin them from such conduct in the future.

31.

In addition, pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for the damages they have suffered as a result of Defendants' unconstitutional conduct and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert their constitutional rights.

## COUNT TWO

### DEFENDANTS HAVE DENIED ACTION AND MR. STRENGTH DUE PROCESS

32.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-27 above as if set forth verbatim herein.

33.

Defendants must provide substantive and procedural due process to individuals and organizations who apply for sign permits along State highways. At the very least, procedural due process requires that an application be reviewed, a decision rendered, and the applicant be given a right to appeal the decision at a public hearing. The individual must also be given notice and an opportunity to be heard at this public hearing. Defendants have denied Plaintiffs this right. Defendants appear to have no suitable procedures whatsoever, as is indicated by the following: their several-month delay in processing Action's applications; their refusal to send the granted permits to Action in October of 2005; their refusal to style the later "denial" of the permits as a "revocation;" their refusal to provide a statutory or regulatory basis for denial; their refusal to commit to whether the denials are "tentative" or "final;" and their refusal to ever provide final responses to the sign applications.

34.

Defendants have also denied Plaintiffs substantive due process. Defendants threaten Action, Mr. Strength, and all others who defy its regulations with criminal liability and civil fines and forfeiture of property. They fail, however, to afford those who would post signs a fair opportunity to know what conduct will expose them to such liability. For example, although the requested signs fully comply

13

with the letter and spirit of all Alabama laws and regulations, Defendants have not allowed the signs based upon what can only be internal, informal, unpublished policies and their total discretion.    Such undefined and ambiguous policies essentially allow Defendants to allow any signs they favor and prohibit any disfavored applicant from posting an unpopular or controversial sign.    Such policies are unconstitutional.

35.

Thus, Plaintiffs have been denied due process.    Because Defendants' conduct is constitutionally invalid, this Court should order them to issue the relevant permits and enjoin them from such conduct in the future.  Short of this, the Court should order Defendants to immediately afford Plaintiffs, and all other sign applicants, procedural due process, to include processing of applications within a reasonable time frame, denials based on citation to actual statutes or regulations, and an appeal process that allows denied applicants to expeditiously challenge the their actions.  Further, and at a minimum, the Court should order Defendants to process sign applications in accordance with the duly adopted laws and regulations and to dispense with discretionary practices and the use of informal internal criteria.

36.

Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for the damages they have suffered as a result of these due process violations and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert their constitutional rights.

## COUNT THREE

## DEFENDANTS' CONDUCT IN PREVENTING THE SIGNS HAS VIOLATED THE FIRST AMENDMENT

37.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-27 above as if set forth verbatim herein.

38.

Defendants' actions have delayed the posting of five signs for many months. Such deprivation unquestionably has a constitutional dimension. Signs are a protected medium for speech. As such, Defendants' conduct has violated several precepts of First Amendment jurisprudence. First, Defendants have taken far more than a brief and specific time to process the applications and appeal. Thus, their conduct and regulations are unconstitutional. Second, Defendants have utilized standardless discretion in dealing with the sign applications. Such a lack of objective criteria in speech permitting is not allowed. Third, although Defendants' unwritten criteria have not been provided to Plaintiffs, it appears that Defendants

15

could never support such regulations under the applicable constitutional test, whether it be strict or intermediate scrutiny or the standard for time, place, or manner regulations. Fourth, the State's laws and regulations controlling signs are impermissibly content-based and cannot survive strict scrutiny. Defendants' arbitrary control over signs – which have been recognized by the Supreme Court as a venerable method of speech activity – reflects a clear failure to acknowledge the important role that signs play in the marketplace of ideas whereby noncommercial and commercial messages are disseminated to the public.

39.

Because Defendants' conduct is constitutionally invalid, this Court should order them to issue the relevant permits and enjoin them from such conduct in the future.

40.

In addition, pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for the damages they have suffered as a result of Defendants' unconstitutional conduct and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert their constitutional rights.

## COUNT FOUR

## REQUEST FOR MANDAMUS RELIEF

41.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-40 above as if set forth verbatim herein.

42.

Action's sign applications fully complied with the DOT's regulations and all applicable Alabama laws and regulations. As such, Plaintiffs have a clear legal entitlement to have the applications granted. Short of that, they are entitled to have the applications reviewed and decisions rendered thereon based upon the actual regulations in place. Plaintiffs also have (i) a right to appeal any adverse decision at a public hearing and (ii) a right to be heard at such a hearing.

43.

Furthermore, Defendants have exercised impermissible discretion in arbitrarily and capriciously refusing to issue the permits.

44.

As such, the Court should grant Plaintiffs' request for mandamus and direct Defendants to (i) issue all of five of the permits sought; or, at the very least, render a decision that comports with due process and allow Plaintiffs to promptly appeal any adverse decision.

17

## COUNT FIVE

## REQUEST FOR INJUNCTIVE RELIEF

45.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-44 above as if set forth verbatim herein.

46.

Plaintiffs have satisfied the criteria for the issuance of injunctive relief to stop Defendants' continued unconstitutional conduct to include: (1) Plaintiffs have shown a likelihood of success on the merits; (2) irreparable harm is ongoing because speech activity has been precluded and thereby several signs, to carry numerous commercial and noncommercial messages, have been unable to operate; (3) harm to Action and Mr. Strength, potential advertisers, and the citizens of and visitors to Millbrook far outweighs any injury that the DOT or Defendants could conceivably incur; and (4) enjoining unconstitutional practices and regulations would not disserve the public interest. As such, the issuance of a preliminary and permanent injunction is warranted.

WHEREFORE, Plaintiffs Action Outdoor Advertising J.V., LLC and Jon P. Strength pray:

(1)    For this Court to preliminarily enjoin Defendants from further unconstitutional conduct;

(2)     For this Court to permanently enjoin Defendants from further
        unconstitutional conduct;

(3)     For this Court to order Defendants to permit the five fully compliant
        proposed signs;

(4)     For this Court to order the Defendants to render a decision on
        Plaintiffs' applications that comports with due process and to allow
        Plaintiffs to promptly appeal any adverse decisions in accordance with
        a constitutional methodology;

(5)     For an award of actual and consequential damages resulting from
        Defendants' unconstitutional conduct;

(6)     For an award of presumed and general damages to compensate
        Plaintiffs for any damages that they have suffered that are difficult or
        impossible to quantify;

(7)     For an award of at least nominal damages as a matter of law based
        upon Defendants' unconstitutional actions and nonaction;

(8)     For an award pursuant to 42 U.S.C. § 1988 of all reasonable costs and
        attorneys' fees incurred by Plaintiffs in bringing this action;

(9)     For a trial by jury on any issue that should not be resolved by the
        Court as a matter of law; and

(10)  For such other and further relief as the Court may deem just and
equitable.

DATED this 9th day of May, 2006.

Respectfully submitted,

BY:  THE WEBB LAW GROUP, L.L.C.

E. Adam Webb
Georgia State Bar No. 743910*

2625 Cumberland Parkway, S.E.
Suite 220
Atlanta, Georgia 30339
(770) 444-0773
(770) 444-0271 (fax)

Nicholas J. Cervera
Frank P. Ralph
Cervera, Ralph & Reeves
914 South Brundidge Street
P.O. Box 325
Troy, Alabama 36801
(334) 566-0116
(334) 566-4073 (fax)

Attorneys for Plaintiffs

*Pro Hac Vice Motion will be promptly
filed.

20