EXHIBIT A

     **ALABAMA DEPARTMENT OF TRANSPORTATION**     
1409 Coliseum Boulevard, Montgomery, Alabama 36110

*Bob Riley*
*Governor*

*Joe McInnes*
*Transportation Director*

June 20, 2006

<u>*Via Certified Mail, RRR*</u>
Action Outdoor Advertising JV, LLC
c/o Steve A. Galberaith
3512 Old Milton Parkway
Alpharetta, GA 30005

    Re:    Five Applications for Permit to Erect Outdoor Advertising Sign dated 4/5/06:
               Mile Post Location 182.09R
               Mile Post Location 181.99R
               Mile Post Location 181.89R
               Mile Post Location 181.79R
               Mile Post Location 182.19R

Dear Mr. Galberaith:

    This letter serves as a final decision by the Alabama Department of Transportation regarding the five separate applications for permits for outdoor advertisements along I-65 on property owned by Jon Strength. After collecting further information from you, your attorney, the City of Millbrook, the Federal Highway Administration, and reviewing applicable state and federal law, your Applications for Permit to Erect Outdoor Advertising Sign dated April 5, 2006, are hereby denied.

    The denial is based, jointly and severally, on the following reasons:

(1)    The action taken by the municipality in re-zoning the subject property from residential to commercial property was done primarily to permit billboards, which is contrary to both federal and state law.

(2)    Because the municipality failed to enact a comprehensive zoning plan prior to the re-zoning of the subject property, contrary to both federal and state law, the Department cannot defer to the municipality's decision to re-zone the property as commercial.

(3)    The municipality issued an invalid variance to the applicant, which nullifies the local approval to erect the billboards.

(4)    The applicant does not currently possess the requisite local approval to erect the billboards because the permit or variance has been rescinded.

(5)    The subject property does not have typical attributes for a commercial area; there is poor access; and commercial uses are inconsistent with current adjacent residential land uses and topography.

June 20, 2006
Page 2

(6) The Federal Highway Administration opined in a letter dated May 11, 2006, that the proposed applications for permits were contrary to the intent and purpose of the Highway Beautification Act. Please find enclosed this opinion for your review.

Should you desire to appeal this decision, you have 14 days to submit a written request for an administrative hearing by certified mail, which should be addressed to the undersigned, identify the matter for which the appeal is requested, and the reasons why you believe the decision is in error.

Sincerely,

John E. Lorentson
State Maintenance Engineer

Encl.

cc: Adam Webb
    Jim Ippolito



**U.S. Department of Transportation**

**Federal Highway Administration**

Alabama Division

500 Eastern Boulevard, Suite 200
Montgomery, Alabama 36117-2018

May 11, 2006

Refer to: HDA-AL

Mr. D. J. McInnes
Director
Alabama Department of Transportation
Montgomery, Alabama

Dear Mr. McInnes:

This is in response to Mr. Randy Braden's letter dated May 5, 2006, requesting our comments and specific Federal law or regulation that addresses the billboard permit situation on certain property along I-65 in Millbrook. Mr. Braden's letter includes copies of the city of Millbrook's Planning Commission minutes which state that the property owner requested that a parcel of land along I-65, north of Highway 14, be annexed into the city *and zoned B-2 for a billboard.* The request was tabled on June 28, 2005, and passed on August 16, 2005. An outdoor advertising company and the property owner had previously, on March 3, 2005, signed lease agreements for five billboard sites.

The Federal outdoor advertising control regulations state in 23 CFR Part 750.708(b) that local zoning actions created primarily to permit outdoor advertising structures shall not be recognized as zoning for outdoor advertising control purposes. The minutes clearly state that the intent for the zoning action for the property was for billboards. Furthermore, the property has none of the attributes for a commercial area; it has poor access (only through a residential neighborhood); it has no utilities according to the State; and the commercial zoning is incompatible with adjacent land use (residential). We are enclosing a legal opinion on FHWA's interpretation of 23 CFR Part 750.708(b), acceptance of zoning for purposes of the Highway Beautification Act (HBA), which can also be found on our website at http://www.fhwa.dot.gov/realestate/zoningop.htm.

The State of Alabama declared in the Federal-State Outdoor Advertising Agreement that it desired to implement and carry out the provisions of the HBA, 23 USC Section 131, and the national policy in order to remain eligible to receive the full amount of all Federal-aid highway funds and passed legislation to implement the HBA in 1971. We believe the State's action to deny these billboard permits is consistent with FHWA policy and the intent of Congress.




Case 2:06-cv-00426-MHT-DRB   Document 10-2   Filed 06/21/2006   Page 4 of 8

<p style="text-align:right">2</p>

Should you have any questions, please contact Mr. Dave Johannes at 334-223-7378.

        Sincerely yours,

        /s/Catherine A. Batey

        Catherine A. Batey
        Acting Division Administrator

Enclosure

cc:
File 410.3
Reading
G:\DJOHANNES\WP\LETTERS-2006\OAC-MILLBROOK ZONING.doc
DJOHANNES/LS 5/10/06







Realty

FHWA Home | Feedback

FHWA > HEP > Realty > Advertising

# Legal Opinion on the FHWA's Interpretation of 23 CFR § 750.708(b), Acceptance of State Zoning for Purposes of the Highway Beautification Act

Cover Letter

The State of Minnesota has requested a legal opinion on the interpretation of 23 CFR §750.708(b). More specifically, it has asked the Federal Highway Administration (FHWA) if this section of the Highway Beautification regulations establishes a two-part test regarding local zoning for outdoor advertising whereby comprehensively zoned areas are deemed in compliance with FHWA regulations even if such zoning constitutes "spot zoning" for billboards. The issue was raised in a recent case in the Minnesota Court of Appeals, *In re Eller Media Company's Application for Outdoor Advertising Device Permits*, 642 N.W.2d 492 (Minn. App. 2002).

The FHWA has never interpreted 23 CFR § 750.708(b) as creating such a two-part test. Rather, the FHWA interprets the language as differentiating between legitimate commercial or industrial zones and limited purpose areas created primarily to allow outdoor advertising. Actions that are facially part of comprehensive zoning, but in fact are merely schemes to allow outdoor advertising in rural or residential areas, are not accepted by the FHWA as valid zoning for purposes of control of outdoor advertising.

To explain the FHWA's interpretation, a quick review of the Highway Beautification Act (HBA) and the FHWA's role in enforcing it would be helpful. The part of the HBA that deals with zoning and the congressional intent behind that section is the key in understanding the FHWA's HBA regulations on zoning.

### Zoning and the HBA: Congress's Intent

The HBA, codified at 23 U.S.C. §131, is a grant-in-aid condition that States must comply with in order to receive full Federal-aid highway funding. The FHWA is the agency charged with implementing the HBA. See 49 CFR §1.48(b)(21). The HBA requires States to "effectively control" outdoor advertising along certain Federal-aid highway systems. These highway systems are the Interstate system, the Federal-aid primary system (as it existed on June 1, 1991), and the National Highway System. Under §131(b), the failure to comply with the HBA can subject a State to the loss of ten percent of its Federal-aid highway funds.

The purposes of the HBA are set forth in 23 U.S.C. § 131(a): to protect the public investment in highways; to promote the safety and recreational value of public travel; and to preserve natural beauty. Outdoor advertising is not banned outright by the HBA. Congress specifically allowed outdoor advertising in valid zoned or unzoned commercial or industrial areas. Section 131(d) acknowledges that "States shall have full authority under their own zoning laws to zone areas for commercial or industrial purposes, and the actions of the States in this regard, will be accepted for the purposes of this Act."

This recognition of the States' zoning authority is not unconditional. The sentence does not constitute a complete abnegation of the Secretary's role in ensuring that in such areas the congressional purposes of the HBA will be followed. The Congress has expressed concern several times about the possibility of "sham or phony zoning" which is done primarily to allow outdoor advertising in questionable areas. This concern over the problem and the intent to deal with it was expressed in the Senate Report accompanying the first Senate bill that was the basis of the HBA of 1965:

> "Some witnesses...speculated that the States, if left to themselves in this matter, would engage in 'strip zoning' and thus zone large stretches of highways as industrial solely for the purpose of outdoor advertising. "The committee notes the qualifying clause quoted above 'which shall be consistent with the purpose of this section.' The purpose of this act is to preserve and develop the recreational and esthetic values of the interstate and primary highway systems, and it would be wholly inconsistent with this purpose for a State to engage in such strip zoning."[1]

Senate Report No. 709, September 14, 1965, p 6.

In the floor discussion of the final version of the HBA, the key Senate sponsor, Senator Jennings Randolph quoted approvingly from the above September 14, 1965, letter from the Secretary of Commerce to the chairman of the House Subcommittee on Roads, and clarified what he believed were the extent of the zoning powers of the State:

> "When State or local governments act to zone areas for commercial or industrial purposes, in accordance with the State's traditional exercise of authority on zoning, these determinations will be accepted for purpose of billboard or junkyard control. This language, of course, does not mean that a State or local authority could place a label 'zoned commercial or industrial' on land adjacent to the Interstate and primary systems solely to permit billboards or junkyards and thereby frustrate the intent of Congress Stated in Section 131(a)."

89 Congressional Record 26820 (1965) (remarks of Senator Randolph); Accord, 1965 U.S. Code Cong. and Admin. News, pp. 3713-14 (letter of the Secretary of Commerce to John C. Kluczynski).

In later amendments to the HBA, Congress expressed continuing concern over sham zoning. In the legislative history of what resulted in the 1968 amendment to the HBA, we find Congressional approval for how the Secretary of Transportation proposed to administer the "customary use" provision of 23 U.S.C. § 131(d):

> "With respect to unzoned areas, we will recognize local practices on customary use as mutually agreed to by State and Federal Agencies. It will be our policy to assume the good faith of the several States in this regard.
>
> "The only exception to the above would be a situation in which State or local authority might attempt to circumvent the law by zoning an area as 'commercial' for billboard purposes only. We think you will agree that this is a reasonable position, since we know that the Congress does not wish for the law to be deliberately evaded."

(Letter of Secretary of Transportation, or DOT Secretary Alan S. Boyd, to Representative John C. Kluczynski, Chairman of the Subcommittee on Roads, Public Works Committee, May 24, 1967, Conference Report No. 1799, 1968 U.S. Code Cong. and Admin. News, pp. 3713)

The legislative history of §131(d) clearly demonstrates that Congress thought that outdoor advertising was a valid enterprise, but intended it to be permitted in valid commercial or industrial areas. The zoning actions by the State, or the local governmental entities granted zoning authority by the State are to be accepted by the FHWA. Such acceptance is not absolute, however, and zoning actions that attempt to evade the intent of Congress will not be permitted. The Secretary of Transportation may and should look behind sham zoning to determine if the intent of Congress is being thwarted.

The authority of the Secretary of Transportation to determine if a zoning action is done primarily to permit outdoor advertising was contested by the State of South Dakota in 1971. The authority to determine whether a State's law on outdoor advertising meets the HBA's requirements was a key issue in *South Dakota v. Volpe*, 353 F.Supp. 335 (D.S.D.1973). The court upheld the Secretary of Transportation's authority to refuse to recognize what amounted to strip zoning done under state law:

> "I find nothing within the legislative history which precludes the Secretary's overall supervision and exercise of power where local authorities have failed to measure up to the objectives of the Act. The Secretary has the responsibility to police performance of the agreements, to promote the reasonable, orderly and effective display of outdoor advertising adjacent to our federally assisted highways." 353 F.Supp. at 344.

The decision by the Secretary was based upon the HBA itself and not the HBA zoning regulations later promulgated by the FHWA. The decision confirmed that the State's authority to zone for outdoor advertising could be questioned by the Secretary.

## The FHWA's Application of the Intent of Congress

The present HBA regulations were promulgated nearly thirty years ago and include a section on acceptance of State zoning. This section, 23 CFR § 750.708, puts into regulation the intent of the Congress that commercial and industrial areas be validly zoned for purposes of erecting outdoor advertising. Subsection (a) essentially restates the statutory basis for the regulation found in §131(d). Subsection (c) says that local zoning efforts not in accordance with the State's grant of zoning authority will be treated as unzoned commercial and industrial areas. Subsection (d) states that limited commercial or industrial activities do not make a zone a valid area for billboards if the primary land use is not also commercial or industrial. Under 23 CFR § 750.708(b), zoning which is "created primarily to permit outdoor advertising structures" is not recognized by the FHWA as valid zoning. Subsection (b) reads:

> "State and local zoning actions must be taken pursuant to the State's zoning enabling statute or constitutional authority and in accordance therewith. Action which is not a part of comprehensive zoning and is created primarily to permit outdoor advertising structures, is not recognized as zoning for outdoor advertising control purposes."

In promulgating §750.708, the FHWA does three things: First, it differentiates between legitimate, comprehensive zoning authorized by law and actions that are not true zoning. Second, it differentiates between legitimate commercial and industrial zones and limited purpose areas created primarily to allow outdoor advertising. Third, it identifies actions that are facially part of comprehensive zoning but in fact are merely schemes to allow outdoor advertising.

The intent of § 750.708 is the same as expressed by Congress in the legislative histories cited above. In the preamble to the final rule, the FHWA explained that "[s]ections 750.708(b) and (d) are essential to assure the recognition of only bona fide commercial and industrial zones, rather than rural or residential zoning classifications or attempts to circumvent the intent of Congress." 40 Federal Register 42843 (September 16, 1975).

As the agency charged with the implementation of the HBA, the FHWA's interpretation of the act is accorded deference by the courts. It is well settled that great deference is paid to an agency's interpretation of its own regulations. *Thomas Jefferson University v. Shalala*, 512 U.S.504, (1994); *City of Alexandria, Va. v. Federal Highway Administration*, 756 F.2d 1014, 1021 (4th Cir. 1985). While the FHWA has not had occasion to formally render an interpretation of §750.708(b), I can find no legal memoranda or letters in the FHWA files where the FHWA has ever interpreted § 750.708 to mean that sham zoning is permissible if is done through comprehensive zoning. During the promulgation of the HBA regulations, the FHWA explained what the aim of 750.708 was: "Sections 750.708(b) and (d) are essential to assure the recognition of only bona fide commercial and industrial zones, rather than rural or residential zoning classifications or attempts to circumvent the intent of Congress." 40 Federal Register 42843 (Sept. 16, 1975).

Thus, a more reasonable interpretation of § 750.708(b) is that it directs the careful examination of a zoning action to make certain that it is a legitimate exercise of zoning powers in furtherance of community-wide planning goals, rather than an attempt to use zoning for the primary purpose of opening up areas for outdoor advertising uses. "[A] comprehensive zoning plan is a scheme or formula that reasonably relates the regulation and restriction of land uses, including the establishment of districts therefore, to the health, safety, and welfare of the public, and thus to the police power, and the exercise of the zoning power is limited thereby." 101A C.J.S. *Zoning and Planning* § 39 (1979). Comprehensiveness in the zoning context requires a carefully thought-out plan that is broad in both its purposes and its geographic scope.

Zoning actions pursuant to a comprehensive plan, as envisioned by § 750.708(b), stand in stark contrast to "spot zoning" or "sham zoning." The term "spot zoning" "commonly refers to the singling out of one lot or other small area for a zoning classification that is different from that accorded similar surrounding land, usually for the benefit of the owner and to the detriment of the community." Mark S. Dennison, Annotation, *Determining Whether Zoning or Rezoning of Particular Parcel Constitutes Illegal Spot Zoning*, 73 ALR 5th 223, 257 (1999). See also *State v. City of Rochester*, 268 N.W. 2d 885, 889-90 (Minn. 1978): "the term applies to zoning changes, typically limited to small plots of land, which establish a use classification inconsistent with surrounding uses and create an island of nonconforming use within a larger zoned district." (Citations omitted). If an city or county takes a zoning action that creates does not have comprehensive zoning and there are spots or strips of land along busy highways zoned "commercial or industrial" when there is no nearby commercial or industrial activity, a suspicion is created that the zoning was done primarily to allow outdoor advertising.

The Minnesota Court of Appeals has concluded that the plain meaning of § 750.708(b) is that *any* action taken as part of comprehensive zoning, even strip zoning to allow outdoor advertising, is consistent with the regulations. See *In re Eller Media*, 642 N.W. 2d at 502. This view of the FHWA regulations is incorrect.

The FHWA has never interpreted 23 CFR 750.708(b) as establishing a two-part test. The section does not mean that if there is comprehensive zoning in an area, there can be no further inquiry about zoning that allows billboards in areas that have no commercial or industrial uses. Under this interpretation, a city could enact a comprehensive zoning plan that establishes in a residential area a long, narrow strip along a busy highway, label it an "outdoor advertising only" zone, and claim that it was complying with the HBA because it had "comprehensive zoning." This would be jarringly inconsistent with the intent of Congress and the FHWA to permit billboards in appropriate zones.

Even if If a city's action does reflect zoning pursuant to a is comprehensively zoned, plan, that does not conclusively settle the issue of phony or sham zoning. It creates a rebuttable presumption that the comprehensive plan and zoning decisions pursuant to that plan zoning isare valid for purposes of allowing outdoor advertising. A comprehensively zoned area can still, however, contain pockets zoned "commercial or industrial" where the only expected commercial or industrial activity is outdoor advertising. The important decision of *South Dakota v. Volpe*, cited above, dealt with what was essentially comprehensive zoning on a State level. The State legislature zoned commercial corridors through the State that corresponded to the Interstate and Federal-aid primary systems, which allowed billboards in the midst of obviously agricultural areas. The trial court noted that "under the South Dakota law existing as of January 1, 1972, on Interstate 90, crossing the State east to west, there would be only two short segments from one border to the other in which billboards would not be permitted. Each of these excepted segments would have been approximately two miles long. The Secretary reasonably concluded that these provisions were obviously inconsistent with the Act's purpose." *South Dakota v. Volpe* 353 F.Supp. at 340. The purpose behind this Statewide zoning was to allow billboards along interstate highways even in areas that had no existing or foreseeable commercial or industrial use.

To determine whether a zoning action is an attempt to circumvent the HBA, the FHWA would look at various factors: the expressed reasons for the zoning change; the zoning for the surrounding area; the actual land uses nearby; the existence of plans for commercial or industrial development; the availability of utilities (such as water, electricity, and sewage) in the newly zoned area; and the existence of access roads, or dedicated access, to the newly zoned area. No one of the above factors alone is determinative. If a combination of them, however, shows that the zoning action is primarily to allow billboards in areas that have none of the attributes of a commercial or industrial area, the FHWA would not be compelled to accept the zoning action as valid under 23 U.S.C. § 131(d).

---

[1] The quoted section on zoning in S. 2084 read:

"(e) Notwithstanding any provision of this section, signs, displays, and devices may be erected and maintained within areas adjacent to the Interstate System and the primary system within six hundred and sixty feet of the nearest edge of the right-of-way which are zoned industrial or commercial under authority of State law, or which are not zoned under authority of State law, but are based for industrial or commercial activities, as determined in accordance with provisions established by the legislatures of the several States, *which shall be consistent with the purposes of this section....*" (emphasis added).

To provide Feedback, Suggestions or Comments for this page contact Janet Myers (janet.myers@fhwa.dot.gov), or call 202-366-2030.

This page last modified on May 11, 2006

FHWA Home | Realty Home | Feedback

**O FHWA**

United States Department of Transportation - Federal Highway Administration